MEMORANDUM OPINION



No. 04-07-00078-CV



MRO SOUTHWEST, INC. d/b/a Crossroads Mall of San Antonio, 


MRO Management, Inc. and Guadalupe Cultural Arts Center,


Appellants



v.



TARGET CORPORATION,


Appellee



From the 285th Judicial District Court, Bexar County, Texas


Trial Court No. 2004-CI-09854


Honorable Michael P. Peden, Judge Presiding



Opinion by: Alma L. López, Chief Justice


Sitting: Alma L. López, Chief Justice

 Sandee Bryan Marion, Justice

 Phylis J. Speedlin, Justice


Delivered and Filed: December 19, 2007


AFFIRMED IN PART, REVERSED AND RENDERED IN PART

 The motion for rehearing filed by appellee, Target Corporation, is denied. This court's
opinion and judgment dated October 31, 2007 are withdrawn, and this opinion and judgment are
substituted. We substitute this opinion to clarify our analysis regarding the duty to indemnify in
relation to the claims brought by MRO Management, Inc. and Guadalupe Cultural Arts Center.

 MRO Southwest, Inc. d/b/a Crossroads Mall of San Antonio, MRO Management, Inc., and
Guadalupe Cultural Arts Center (collectively "MRO") appeal a judgment rendered in favor of Target
Corporation in a construction dispute. MRO challenges the trial court's granting of summary
judgment in favor of Target on its contractual claims and against MRO on its negligence claim. We
reverse the summary judgment granted in Target's favor on its contractual claims and render
judgment that Target take nothing on its claims against MRO. We affirm the summary judgment
against MRO on its negligence claim.

Background


 MRO Southwest owns Crossroads Mall, and MRO Management manages the mall. MRO
Southwest and Target entered into a Site Development Agreement ("SDA") pursuant to which MRO
Southwest agreed to construct the building pad that would be used by Target in building a store
adjacent to Crossroads Mall. MRO Southwest contracted with Joeris General Contractors to
complete the building pad. The SDA required MRO Southwest to remove any utility lines that ran
under the building pad. A 24 inch storm drain was not removed before MRO Southwest turned the
building pad over to Target. Target's contractor, Sun Builders, struck the storm drain while drilling
the store's foundation, and the storm drain was filled with concrete. Because the storm drain was
filled with concrete, storm water backed into the mall during an exceedingly heavy rain in 2002,
causing extensive damage especially to the Guadalupe Cultural Arts Center, one of the mall's
tenants.

 MRO sued Target for negligence, and Target counterclaimed for breach of contract. Both
parties filed motions for summary judgment. The trial court granted summary judgment against
MRO on its negligence claim and in favor of Target on its breach of contract counterclaim. After
a bench trial, the trial court awarded Target $300,000.00 in attorneys' fees.

Standard of Review


 A traditional motion for summary judgment is properly granted only when the movant
establishes that there is no genuine issue of material fact and that the movant is entitled to judgment
as a matter of law on a ground expressly set forth in the motion. Joe v. Two Thirty Nine Joint
Venture, 145 S.W.3d 150, 156 (Tex. 2004). In reviewing the grant of a summary judgment, we
indulge every reasonable inference and resolve any doubt in favor of the non-movant. Id. 
Additionally, we assume all evidence favorable to the non-movant as true. Id. 

 In reviewing a no-evidence summary judgment motion, we examine the record in the light
most favorable to the nonmovant; if the nonmovant presents more than a scintilla of evidence
supporting the disputed issue, summary judgment is improper. Forbes, Inc. v. Granada Biosciences,
Inc., 124 S.W.3d 167, 172 (Tex. 2003). Less than a scintilla of evidence exists when the evidence
is so weak as to do no more than create a mere surmise or suspicion of a fact. Id. More than a
scintilla of evidence exists if it would allow reasonable and fair-minded people to differ in their
conclusions. Id.

Target's Recovery of Attorneys' Fees


 MRO contends that Target was not entitled to recover the attorneys' fees under any of the 
following grounds asserted by Target for their recovery: (1) section 38.001(8) of the Texas Civil
Practice and Remedies Code; (2) attorneys' fees as damages; or (3) section 13 of the SDA. 



A. Section 38.001(8) of the Texas Civil Practice and Remedies Code 

 A person may recover reasonable attorneys' fees from an individual or corporation, in
addition to the amount of a valid claim and costs, if the claim is for breach of an oral or written
contract. Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (Vernon Supp. 2006). To recover
attorneys' fees under section 38.001, a party must: (1) prevail on the claim for which the attorneys'
fees are recoverable; and (2) recover damages. Green Int'l, Inc. v. Solis, 951 S.W.2d 384, 390 (Tex.
1997); see also Mustang Pipeline Co. v. Driver Pipeline Co., 134 S.W.3d 195, 201 (Tex. 2004). In
this case, Target did not recover damages; therefore, it could not recover attorneys' fees under
section 38.001(8).

B. Attorneys' Fees as Damages (1)

 As a general rule, attorneys' fees are not recoverable in Texas unless allowed by contract or
by statute. Oscar M. Telfair, III, P.C. v. Bridges, 161 S.W.3d 167, 170 (Tex. App.--Eastland 2005,
no pet.). In Baja Energy, Inc. v. Ball, however, the Eastland court recognized an equitable exception
to the general rule when a claimant is required to prosecute or defend litigation involving a third
party as a consequence of the wrongful act of the defendant. 669 S.W.2d 836, 839 (Tex.
App.--Eastland 1984, no writ); see also Parenti v. Moberg, No. 04-06-00497-CV, 2007 WL
1540952, at *6 (Tex. App.--San Antonio May 30, 2007, no pet. h.) (recognizing exception). The
exception "only applies when a wrongful act requires the claimant to incur attorney's fees in prior
litigation involving a third party." Bridges, 161 S.W.3d at 170 (emphasis added). The exception
is inapplicable in this case because Target is not seeking attorneys' fees which it incurred in prior
litigation involving a third party; instead, Target is seeking the attorneys' fees incurred in the original
litigation with the party alleged to have committed the wrongful act. See id.

3. Section 13 of the SDA: Recovery of Attorneys' Fees as a Prevailing Party

 Section 13 of the SDA provides as follows:

 Section 13. Costs and Attorney's Fees. If either party brings or commences any legal
action or proceeding to enforce any of the terms of this Agreement (or for damages
by reason of an alleged breach of this Agreement), the prevailing party in such action
shall be entitled to recovery of all costs and expenses of litigation, including
reasonable attorney's fees.


 Target asserted two claims against MRO relating to the SDA. The first claim, based on
MRO's failure to remove the storm drain, is not a claim seeking to enforce the SDA by requiring
MRO to remove the storm drain. Target's store construction is complete, and Target is not seeking
to have the storm drain removed from under its store. Instead, Target's claim is for a breach of the
SDA. Because Target does not seek damages, however, Target did not commence a legal action to
recover "damages by reason of an alleged breach" as required to be a prevailing party under section
13 of the SDA.

 In its second claim, Target sought to enforce the indemnity provision of the SDA which
provides:

 Section 8. Indemnity. Developer shall defend, protect, indemnify and hold harmless
Target from and against all claims or demands, including any actions or proceedings
brought thereon, and all costs, expenses and liabilities of any kind relating thereto,
including reasonable attorneys' fees and cost [sic] of suit, arising out of or resulting
from any construction activity performed under this Agreement by Developer or
anyone claiming by, through or under Developer; provided, however, the foregoing
obligation shall not pertain to claims or demands based on Target's negligence. 
Target shall defend, protect, indemnify and hold harmless Developer from and
against all claims or demands, including any actions or proceedings brought thereon,
and all costs, expenses and liabilities of any kind relating thereto, including
reasonable attorneys' fees and cost [sic] of suit, arising out of or resulting from any
construction activity performed under this Agreement by Target or anyone claiming
by, through or under Target; provided, however, the foregoing obligation shall not
pertain to claims or demands based on Developer's negligence.


In seeking to enforce the indemnity provision, Target sought to recover its attorneys' fees based on
MRO Southwest's failure to defend and indemnify it against the claims made by MRO Southwest,
MRO Management, and the Guadalupe Cultural Art Center ("GCAC").

 With regard to the claims made by MRO Southwest, this court has held, "An indemnity
provision does not apply to claims between the parties to the agreement." MG Bldg. Materials, Ltd.
v. Moses Lopez Custom Homes, Inc., 179 S.W.3d 51, 63 (Tex. App.--San Antonio 2005, pet.
denied). Instead, the indemnity provision only indemnifies a party to the agreement against claims
brought by third parties. Id. Based on this court's holding in MG Bldg. Materials, Ltd., Target is
not entitled to a defense or indemnification for the claims brought by MRO Southwest. (2)

 With regard to the claims brought by MRO Management and the GCAC, Target is entitled
to indemnity only as to those claims arising out of construction activities performed by the Developer
and anyone claiming by, through or under the Developer. In this case, the claims asserted by MRO
Management and GCAC arise out of the alleged deficient construction activities by Target, i.e.,
prematurely drilling and failing to act appropriately after drilling into the storm drain. In determining
whether a duty to defend arises under an indemnity provision, we focus on the facts alleged. English
v. BGP Int'l, Inc., 174 S.W.3d 366, 373 (Tex. App.--Houston [14th Dist.] 2005, no pet.). Moreover,
where the underlying petition does not raise factual allegations sufficient to invoke the duty to
defend, then even proof of all of those allegations cannot invoke the duty to indemnify. Collier v.
Allstate County Mut. Ins. Co., 64 S.W.3d 54, 62 (Tex. App.--Fort Worth 2001, no pet.); Reser v.
State Farm Fire & Cas. Co., 981 S.W.2d 260, 263 (Tex. App.--San Antonio 1998, no pet.). In the
instant case, MRO Management and GCAC alleged claims for damages arising out of Target's
activities, not activities performed by the Developer or anyone claiming by, through or under the
Developer. Proof of those factual allegations cannot invoke the duty to indemnify. Accordingly,
Target cannot prevail on its claim seeking to enforce the indemnity provision as a matter of law and
is not entitled to recover its attorneys' fees under section 13 of the SDA.

D. Conclusion

 Because Target was not entitled to recover attorneys' fees on any of the asserted bases, the
trial court erred in denying MRO's summary judgment with regard to Target's claims. The trial
court's judgment in favor of Target on its claims is reversed, and judgment is rendered that Target
take nothing on its claims.

MRO's Negligence Claim


 A cause of action for negligence has three elements: (1) a legal duty; (2) a breach of that duty;
and (3) damages proximately resulting from the breach. Praesel v. Johnson, 967 S.W.2d 391, 394
(Tex. 1998); Avalos v. Brown Automotive Center, Inc., 63 S.W.3d 42, 47 (Tex. App.--San Antonio
2001, no pet.). The existence of a legal duty is a question of law for the court. Praesel, 967 S.W.2d
at 394; Avalos, 63 S.W.3d at 47. 

 Duty is the function of several interrelated factors, including the risk, foreseeability, and
likelihood of injury, which are weighed against the social utility of the actor's conduct, the
magnitude of the burden of guarding against the injury, and the consequences of placing that burden
on the actor. Avalos, 63 S.W.3d at 47. The foremost and dominant consideration in determining
whether a defendant owes a duty to act reasonably is foreseeability of the risk. Garcia v. Cross, 27
S.W.3d 152, 155-56 (Tex. App.--San Antonio 2000, no pet.). Foreseeability means that a person
who possesses ordinary intelligence should have anticipated the danger that his negligent act would
create for others. Id.

 Target asserts that it had no duty to discover that MRO breached the SDA by failing to
remove the storm drain. MRO contends that Target had two separate duties: (1) a duty not to drill
prior to July 2, 2002; and (2) a duty to take proper action when it drilled into the storm drain.

A. Duty Not To Drill Prior to July 2, 2002

 Section 3 of the SDA describes the site improvement work MRO Southwest was required
to complete for Target. Section 3(B) required MRO Southwest to construct the building pad, which
the SDA refers to using the defined term "Pad." The Pad was to be "designed and constructed for
the use of shallow spread footings or shallow drilled piers." The completion of the Pad was to be
evidenced by a written certification confirming the preparation of the Pad was complete at the time
of Pad turnover. The Pad was required to be complete by June 2, 2002, and MRO provided the
certification that the Pad was complete on June 3, 2002.

 MRO argues that although the deadline for completing the Pad was June 2, 2002, sections
3(E) and 3(F) of the SDA gave MRO until July 2, 2002, to remove the storm drain. Sections 3(E)
and 3(F) of the SDA describe additional site improvement activity that MRO was required to
complete as follows:

 (E) Providing permanent electric, gas and telephone service at required capacities
to points selected by Target within five (5) feet of the Building Area on the
Target Tract (except gas shall be provided to a point selected by Target
within its Building Area), including in each instance, the installation of main
feeder lines, conduits, piping, wiring, valves, manholes and other appurtenant
devices (to the extent such work is not performed by Developer, Developer
will cause such work to be performed by the utility companies providing such
services); and, to the extent required, relocate all existing utility lines,
conduits and/or appurtenances from the designated Building Area. Tap fees,
meters, connection charges and similar expenses shall be the sole
responsibility of each Building Area.


 (F) Providing a complete storm sewer system, on-site or off-site, for drainage of
the parking lot and the roofs of all buildings, including, without limitation,
all underground pipes, off-site and on-site storm and flood water retention
areas, if any, and catch basins.


(emphasis added). The activity required by sections 3(E) and 3(F) was to be completed by July 2,
2002. Because removing the storm drain involved the relocation of existing utility lines, MRO
argues that such work was encompassed by section 3(E) and had a deadline of July 2, 2002. Target
asserts that section 3(E) only relates to the installation of permanent utilities and does not relate to
the removal of the storm drain after the Pad was turned over because the term "Building Area" as
used in section 3(E) is a larger area than the Pad.

 Although Aal Jordan, Target's on-site representative, stated that site work is on-going after
a building pad is turned over in construction projects, he clarified that the work would be off-site or
off the pad, and if lines remained under the Pad after turnover, MRO should have advised Target. 
Jerry Marroquin, MRO's on-site manager, testified that delivering the pad meant delivering a pad
that did not have any live utilities running underneath the pad. Jeff Jackson, a registered 
professional engineer retained by MRO, testified that MRO was required to deliver the pad without
any utilities under it that would present a problem to Sun Builders in constructing the store. Bruce
Weir, an architect retained by MRO, stated that MRO's contractor, Joeris, missed several
opportunities to fix the storm drain once it was discovered. Finally, the engineer who prepared the
construction plans, Greg Smith, testified that Dave Monnich, an MRO representative, repeatedly
stated at meetings that the Pad was to be delivered without any active or inactive utilities under it. 
 We hold as a matter of law that the SDA required the storm drain to be removed when the
Pad was turned over. The date the Pad was turned over was the date Target was able to begin its
construction. Leaving a utility line under the Pad that would prevent Target from beginning its
construction would render the June 2, 2002 deadline meaningless. Requiring the storm drain to be
removed when the Pad was turned over also appears to comport with common sense. If MRO was
required to turn over the Pad on June 2, 2002, for use by Target in constructing the store, MRO could
not in the next month tear up the Pad it had turned over to relocate or remove the storm drain. 
Finally, requiring the storm drain to be removed before the Pad was turned over is not inconsistent
with section 3(E) of the SDA. Because the term "Building Area" encompasses a larger area than the
term Pad, section 3(E) can be read as requiring the relocation of the existing utility lines in the
Building Area (not located under the Pad) as needed to provide permanent electric, gas and telephone
service to the points in the Building Area selected by Target.

B. Duty to Take Proper Action

 The second duty MRO contends that Target breached was a duty to investigate when its
contractor, Sun Builders, drilled into the storm drain. Because MRO Southwest's initial breach in
failing to remove the storm drain gave rise to the injury, however, the consequences of placing a
burden on Target weighs against the imposition of a duty. See Avalos, 63 S.W.3d at 47. As between
MRO Southwest and Target, MRO Southwest was in a better position to foresee the risk and
likelihood of injury to itself, its management company, and its tenants as a result of its breach. See
id. 

 Moreover, the evidence conclusively established that Target did make an inquiry when Sun
Builders drilled into the storm drain. Although the evidence is conflicting as to whether Joeris's
superintendent, Billy Carter, provided any assurances at that time, Carter does not dispute that Target
contacted him when the problem arose. Once Target satisfied any duty it had to make the inquiry
and put MRO Southwest on notice, any further duty to ensure that MRO Southwest's failure to
comply with the SDA would not cause injury to third parties was a duty owed by MRO Southwest.

Conclusion


 The trial court's summary judgment in favor of Target is reversed, and judgment is rendered
that Target take nothing on its claims. The trial court's summary judgment that MRO take nothing
on its claims against Target is affirmed. 

 Alma L. López, Chief Justice



1. MRO initially contends that Target did not raise this ground in its motion. Although Target cited Baja - the
seminal case - in its motion, it does not expressly make an argument for recovery under the equitable exception to the
general rule until its reply to MRO's response to Target's motion. However, for purposes of this discussion, we will
assume that Target sufficiently asserted this ground for recovery in its motion.
2. Although Target cites Ingersoll-Rand Co. v. Valero Energy Corp., 997 S.W.2d 203, 205 (Tex. 1999), that
opinion discusses when an indemnitee's contractual claim for indemnification matures for purposes of the compulsory
counterclaim rule. It does not address whether an indemnity provision applies to claims between the parties to the
agreement.